IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

STEWART MANAGO,

    Plaintiff,                        No. CIV S-11-2891 GGH P

    vs.

MATTHEW CATE, et al.,

    Defendants.              <u>ORDER</u>

_____/

        Plaintiff is a state prisoner proceeding pro se. He seeks relief pursuant to 42 U.S.C. § 1983 and has requested authority pursuant to 28 U.S.C. § 1915 to proceed in forma pauperis. This proceeding was referred to this court by Local Rule 302 pursuant to 28 U.S.C. § 636(b)(1).

        Plaintiff has submitted a declaration that makes the showing required by 28 U.S.C. § 1915(a). Accordingly, the request to proceed in forma pauperis will be granted.

        Plaintiff is required to pay the statutory filing fee of $350.00 for this action. 28 U.S.C. §§ 1914(a), 1915(b)(1). By this order, plaintiff will be assessed an initial partial filing fee in accordance with the provisions of 28 U.S.C. § 1915(b)(1). By separate order, the court will direct the appropriate agency to collect the initial partial filing fee from plaintiff's trust account and forward it to the Clerk of the Court. Thereafter, plaintiff will be obligated for monthly

1

payments of twenty percent of the preceding month's income credited to plaintiff's prison trust account. These payments will be forwarded by the appropriate agency to the Clerk of the Court each time the amount in plaintiff's account exceeds $10.00, until the filing fee is paid in full. 28 U.S.C. § 1915(b)(2).

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2).

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227-28 (9th Cir. 1984). The court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. Neitzke, 490 U.S. at 327. The critical inquiry is whether a constitutional claim, however inartfully pleaded, has an arguable legal and factual basis. See Jackson v. Arizona, 885 F.2d 639, 640 (9th Cir. 1989); Franklin, 745 F.2d at 1227.

A complaint must contain more than a "formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient to "raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1965 (2007). "The pleading must contain something more...than...a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." Id., quoting 5 C. Wright & A. Miller, Federal Practice and Procedure 1216, pp. 235-235 (3d ed. 2004). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, ___ U.S. ___, 129 S.Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570, 127 S.Ct. 1955). "A claim has facial plausibility when the plaintiff pleads factual content

that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

In reviewing a complaint under this standard, the court must accept as true the allegations of the complaint in question, Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740, 96 S.Ct. 1848 (1976), construe the pleading in the light most favorable to the plaintiff, and resolve all doubts in the plaintiff's favor. Jenkins v. McKeithen, 395 U.S. 411, 421, 89 S.Ct. 1843 (1969).

Plaintiff alleges that some twenty defendants have placed his life in jeopardy by failing to protect him "from the constant threat of violence at California State Prison-Sacramento, as a form of retaliation" for plaintiff's having provided testimony against a number of "corrupted correctional staff within the CDCR.[1]" Complaint, pp. 1-2, 3-5. Plaintiff's claims hark back to December 2003, when plaintiff was housed at California State Prison - Sacramento and reported to a Special Agent Jill Chapman at the Office of Internal Affairs that a correctional officer was engaged in sexual misconduct at CSP-Sac. Id., at 6. Without naming any defendant or providing any dates or circumstances, plaintiff contends he was himself the victim of sexual assault and sexual harassment during the investigation which resulted in the termination of the CDCR staff member on whom he reported. Id. Following plaintiff's Jan. 2004 transfer to Salinas Valley State Prison (SVSP) for therapeutic reasons, on Feb. 9, 2004, a psych tech "attempted to solicit" plaintiff to take part in some form of (undefined) criminal behavior after which plaintiff on Feb. 11, 2004, reported this to the prison's investigator, a Lieutenant A. Middlebrooks. Id. As a result of the subsequent internal investigation, the psych tech plaintiff reported on was arrested and his CDCR employment terminated. Id.

Plaintiff contends that on Feb. 3, 2004 (i.e., prior to the alleged misconduct or criminal activity by the SVSP psych tech), plaintiff appeared before the Unit Classification

---

[1] California Department of Corrections and Rehabilitation.

3

Committee (UCC) at SVSP at Special Agent Chapman's request; an associate warden then referred plaintiff to a classification staff rep. at CDCR headquarters to be transferred for his safety to California Medical Facility (CMF). Cmp., p. 6. Although plaintiff contends that this was to protect him from further acts of retaliation at SVSP or other Level IV prisons, he does not specify any such acts prior to this time at SVSP.

Plaintiff contends that he "learned" that some CSP-Sac prison officials were trying to set him up to be killed for his having reported the officer, Mary Barrett, for sexual misconduct. Cmp., p. 7. Apparently, plaintiff was informed by an inmate named Hackett, CDCR # K23395, that defendant Vance and a Counselor Kennedy (who plaintiff for some reason does not name as a defendant) had had him (Hackett) transferred from CSP-Sac to SVSP to try to prevent plaintiff from testifying against Barrett. Id. In March, 2004, plaintiff reported what Hackett had said about some of CSP-Sac prison staff to Lt. Middlebrooks who in turn reported it to Special Agent Chapman, but this investigation was not conducted "in a timely manner," resulting in a number of allegedly retaliatory transfers imposed on plaintiff. Id.

Plaintiff provided testimony against Barrett before the state personnel board in June of 2004 and was returned to SVSP "without incident." Cmp., at 7. Plaintiff alleges that he was transferred in September 2004 to High Desert State Prison and denied mental health treatment in violation of the Coleman v. Wilson class action but he names no defendant as responsible for the denial. Id. In any event, plaintiff then goes on to assert that in March of 2004 Coleman attorneys asked that plaintiff be transferred to a different level of care.[2] Id. Plaintiff then states that racial tensions had HDSP on lockdown when he arrived, and in January 2005, he was placed in the ASU[3] by prison officials (unnamed) who falsely alleged he was conspiring to murder staff. Id., at 8. Plaintiff alleges that in March 2005, an Officer Cole (not named as a

---

[2] Plaintiff's writing is illegible as to what level of care he refers to.

[3] Administrative Segregation Unit.

4

1  defendant) "attempted to solicit plaintiff to conspire with him to assault another inmate." Id.
2  Plaintiff reported Officer Cole's alleged effort to have the inmate assaulted and killed, resulting
3  in another internal investigation. Id.

4  Plaintiff was transferred back to CSP-Sac in the ASU/EOP[4] section and was told
5  by several inmates that prison officials including defendants Vance and Garcia were telling other
6  inmates that plaintiff was a "snitch" because of his having reported Barrett and because he would
7  be testifying against her. Cmp., p. 8. When plaintiff's attorney informed defendants Kernan and
8  Walker of the situation, she was told that the allegations would be investigated; plaintiff claims
9  that he believes they conducted "a poor investigation, which resulted in plaintiff being physically
10 assaulted on two occasions." Id., at 8-9. Plaintiff does not at that point provide any description
11 whatever of the circumstances of the two claimed assaults. Instead, plaintiff simply alleges that
12 defendants Kernan, Walker, Lizirrage, Vance, Leiber, Baughman, Mini and Garcia knew or
13 should have known that plaintiff's transfer to CSP-Sac did not advance a legitimate penological
14 goal. Id., at 9. He also claims that these same defendants plus defendants Cate, Clough,
15 Donahoo, Williams Rios, Towns and Lee knew or should have known that plaintiff provided
16 testimony against Officer Barrett and that "some staff and inmate task force inmates" were
17 "mad" about it and that plaintiff's life would be in danger at CSP-Sac. Id.

18 Plaintiff filed an inmate appeal on Oct. 13, 2006, concerning some (unnamed)
19 alleged prison staff involvement in a conspiracy to have plaintiff assaulted or murdered for
20 having reported the sexual misconduct of Officer Barrett. Cmp., p. 9. Although plaintiff states
21 that he himself did not observe it, plaintiff claims that a C/O[5] Williamson (not a party) reported,
22 on Oct. 20, 2006, that another inmate had attempted to assault plaintiff while he was in the
23 mental health treatment area. Id. Plaintiff then goes on to describe how in Aug. 2007, when

---

25  [4] Enhanced Outpatient Program.

26  [5] Correctional Officer.

5

1  plaintiff was before an Institutional Classification Committee (ICC), defendant Vance told the
2  ICC that plaintiff could not return to A-facility "due to an alleged confidential enemy situation."
3  Id., at 10.  The chairperson reviewed plaintiff's c-file and determined that there were two non-
4  confidential enemies listed but plaintiff did not consider them enemies and ultimately had them
5  removed as enemies.  Id.  Plaintiff was placed in B-facility as he had earlier requested.  Id.
6  Plaintiff then goes on to relate that the control booth officer in B-facility, on Aug. 22, 2007
7  refused to let him go to the yard due to an enemy concern and that the lieutenant did not want to
8  take the risk.  Cmp., p. 11.  The control booth officer later told plaintiff that there was an inmate
9  on B-yard who had "snitched on plaintiff, and other Crips and Bloods" about their alleged
10 conspiracy to murder HDSP staff.  Id.  Plaintiff believed that the officer was trying to mislead
11 him but he nevertheless alleges that defendants Kernan, Walker, Lizirrage, Vance, Baughman
12 and Garcia knew that plaintiff had documented enemies on B-facility before moving him there
13 (id.), a very confusing claim inasmuch as plaintiff claims that he was responsible for having
14 removed two enemies from his file and wanted to move to B-facility and in light of the fact that
15 he was not allowed to leave his cell until the question of enemies was cleared up.

16         Plaintiff claims that "defendant Vance and other prison officials claimed" that
17 they believed it would be in plaintiff's best interest to be transferred to another prison.  Cmp., p.
18 12.  Plaintiff alleges that defendants Walker, Vance, Lizarrage, Leiber, Baughman and Garcia
19 believed allowing plaintiff to be housed at CSP-Sac would allow him to be retaliated against and
20 that these defendants, prior to March 2008, conspired to set plaintiff up for an assault or murder
21 by "inmate task force inmates."  Id.  Plaintiff then references that a year earlier in March 2007 he
22 had been removed from A-facility to C-facility where he was denied proper mental health
23 treatment.  Id.  Plaintiff alleges that the C-facility mental health staff conspired with defendants
24 Walker, Vance, Kenan, Leiber and "other (CDCR prison officials" to cover up the sexual assault
25 against plaintiff.  Id.  Plaintiff alleges that on Feb, 16, 2009 defendants failed to protect plaintiff
26 from a "threat of violence" and that he was a "victim of battery by three assailants."  Id., at 13-

1    15.  Plaintiff also claims he was attacked on Sept. 8, 2009 by two inmates in an area of B-facility
2    at CSP-Sac where many correctional officers were assigned and had spread rumors about
3    plaintiff's being a "snitch" regarding Officer Barrett. Id., at 16. Plaintiff claims that defendant
4    Gutierrez committed fraud by writing a rules violation report stating that plaintiff and the inmates
5    he alleges attacked him were engaged in mutual combat. Id. Plaintiff contends that defendants
6    Donahoo, Alvarado, Jakobsen, Karelas and Mills committed fraud and falsified state records in
7    the Sept. 8, 2009 crime incident report in an effort to cover up their acts in retaliation against
8    plaintiff for his testimony against former C/O Barrett. Id., at 16-17. Plaintiff does not specify
9    how the report was falsified. Plaintiff claims that defendants Lee and Masterson unlawfully
10   failed to file a written report documenting the excessive force used against plaintiff "by the
11   inmates and other correctional officers." Id., at 17. Plaintiff generally does not name the
12   correctional officers involved in his claims of excessive force although he appears to allege that it
13   is his belief that defendant Masterson kicked him causing a fracture in his left rib cage. Id. To
14   the extent he does, he does so in a vague and conclusory fashion. Plaintiff should clarify as to
15   defendant Masterson in an amended complaint if he has some basis beyond his belief for such an
16   allegation as well as to his claims of excessive force against any other defendant. Plaintiff makes
17   confusing claims such as that defendant Rios unlawfully found plaintiff not guilty of fighting
18   with inmates to cover up the fact that staff had failed to file written reports and failed to protect
19   him. Id., at 18. Plaintiff also evidently intends to make allegations of inadequate medical care.
20   Id., at 19. Plaintiff alleges he seeks money damages in the caption of his complaint but not
21   elsewhere.

22              Plaintiff's filing is unnecessarily taxing to follow because he fails to provide, as
23   required by Fed. R. Civ. P. 8(a)(2), "a short and plain statement of the claim showing that the
24   pleader is entitled to relief...." Plaintiff's complaint illustrates the "unfair burdens" imposed by
25   complaints, "prolix in evidentiary detail, yet without simplicity, conciseness and clarity" which
26   "fail to perform the essential functions of a complaint." McHenry v. Renne, 84 F.3d 1172, 1179-

1  80 (9th Cir. 1996).  It is not necessary for plaintiff to set forth in detail the chronology of events
2  extending back into 2003; it is enough to summarize those events and then to proceed to set forth
3  with specificity what is actually at issue in the complaint.  Plaintiff may be able to frame clearly
4  cognizable claims but this complaint will be dismissed.  Plaintiff will be granted leave to amend.

5  As to plaintiff's claims averring that the defendants "knew or should have known"
6  various of the circumstances plaintiff sets forth, plaintiff is reminded that in suing for money
7  damages under 42 U.S.C.§ 1983,[6] the statute requires that there be an actual connection or link
8  between the actions of the defendants and the deprivation alleged to have been suffered by
9  plaintiff.  See Monell v. Department of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423
10 U.S. 362 (1976).  "A person 'subjects' another to the deprivation of a constitutional right, within
11 the meaning of  § 1983, if he does an affirmative act, participates in another's affirmative acts or
12 omits to perform an act which he is legally required to do that causes the deprivation of which
13 complaint is made."  Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

14 Moreover, supervisory personnel are generally not liable under § 1983 for the
15 actions of their employees under a theory of respondeat superior and, therefore, when a named
16 defendant holds a supervisorial position, the causal link between him and the claimed
17 constitutional violation must be specifically alleged.  See Fayle v. Stapley, 607 F.2d 858, 862
18 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978), cert. denied, 442 U.S.
19 941 (1979).  Vague and conclusory allegations concerning the involvement of official personnel
20 in civil rights violations are not sufficient.  See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th
21 Cir. 1982).

22 As to plaintiff's claims of conspiracy, plaintiff must make some showing of an
23 agreement or a meeting of the minds on the part of defendants to violate his constitutional rights.

---

[6] "Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." 42 U.S.C. § 1983.

1  Woodrum v. Woodward County, 866 F.2d 1121, 1126 (9th Cir. 1989), citing Fonda v. Gray, 707

2  F.2d 435 (9th Cir. 1983).  Conspiracy allegations must be supported by material facts and not be

3  merely conclusory statements.  Lockary v. Kayfetz, 587 F. Supp. 631 (N. D. Cal. 1984).

4  As to plaintiff's insufficiently alleged claims of excessive force, plaintiff must

5  provide facts specifically linking individual defendants to force that was applied "maliciously

6  and sadistically to cause harm," rather than "in a good-faith effort to maintain or restore

7  discipline...."  Hudson v. McMillian, 503 U.S. 1, 6-7,112 S. Ct. 995, 999 (1992), citing Whitley

8  v. Albers, 475 U.S. 312, 106 S.Ct. 1078 (1986).  When determining whether the force was

9  excessive, we look to the "extent of the injury..., the need for application of force, the

10 relationship between that need and the amount of force used, the threat 'reasonably perceived by

11 the responsible officials,' and 'any efforts made to temper the severity of a forceful response.'"

12 Hudson, supra, at 7, 112 S. Ct. at 999.

13 With respect to his claims of defendants having failed to protect him, "'prison

14 officials have a duty... to protect prisoners from violence at the hands of other prisoners.'"

15 Farmer v. Brennan, 511 U.S. 825, 833, 114 S.Ct. 1970, 1976 (1994).  "[A] prison official

16 violates the Eighth Amendment when two requirements are met.  First, the deprivation alleged

17 must be, objectively, 'sufficiently serious'....  For a claim (like the one here) based on a failure to

18 prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial

19 risk of serious harm."  Id. at 834, 114 S.Ct. at 1977.  Second, "[t]o violate the Cruel and Unusual

20 Punishments Clause, a prison official must have a 'sufficiently culpable state of mind' ... [T]hat

21 state of mind is one of 'deliberate indifference' to inmate health or safety."  Id.  The prison

22 official will be liable only if "the official knows of and disregards an excessive risk to inmate

23 health and safety; the official must both be aware of facts from which the inference could be

24 drawn that a substantial risk of serious harm exists, and he must also draw the inference."  Id. at

25 837, 114 S.Ct. at 1979.  It is not enough for plaintiff to allege that he believes that defendants

26 knew or should have known that he was being placed in a situation of substantial risk to his

safety in a conclusory fashion, attempting to implicate a broad swath of defendants. Plaintiff must set forth a factual predicate linking each defendant to the harm he allegedly suffered.

As to any claims of inadequate medical care, plaintiff must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106, 97 S. Ct. 285, 292 (1976). To prevail, plaintiff must show both that his medical needs were objectively serious, and that defendants possessed a sufficiently culpable state of mind. Wilson v. Seiter, 501 U.S. 294, 299, 111 S. Ct. 2321, 2324 (1991); McKinney v. Anderson, 959 F.2d 853 (9th Cir. 1992) (on remand). The requisite state of mind for a medical claim is "deliberate indifference." Hudson v. McMillian, 503 U.S. 1, 4, 112 S. Ct. 995, 998 (1992).

A serious medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain. Indications that a prisoner has a serious need for medical treatment are the following: the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain. See, e.g., Wood v. Housewright, 900 F. 2d 1332, 1337-41 (9th Cir. 1990) (citing cases); Hunt v. Dental Dept., 865 F.2d 198, 200-01 (9th Cir. 1989). McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992), overruled on other grounds, WMX Technologies v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc).

In Farmer v. Brennan, 511 U.S. 825, 114 S. Ct. 1970 (1994) the Supreme Court defined a very strict standard which a plaintiff must meet in order to establish "deliberate indifference." Of course, negligence is insufficient. Farmer, 511 U.S. at 835, 114 S. Ct. at 1978. However, even civil recklessness (failure to act in the face of an unjustifiably high risk of harm which is so obvious that it should be known) is insufficient. Id. at 836-37, 114 S. Ct. at 1979. Neither is it sufficient that a reasonable person would have known of the risk or that a defendant should have known of the risk. Id. at 842, 114 S. Ct. at 1981.

Finally, in order to state a retaliation claim, a plaintiff must plead facts which suggest that retaliation for the exercise of protected conduct was the "substantial" or "motivating" factor behind the defendant's conduct. See Soranno's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1314 (9th Cir. 1989). The plaintiff must also plead facts which suggest an absence of legitimate correctional goals for the conduct he contends was retaliatory. Pratt at 806 (citing Rizzo at 532). Verbal harassment alone is insufficient to state a claim. See Oltarzewski v. Ruggiero, 830 F.2d 136, 139 (9th Cir. 1987). However, even threats of bodily injury are insufficient to state a claim, because a mere naked threat is not the equivalent of doing the act itself. See Gaut v. Sunn, 810 F.2d 923, 925 (9th Cir. 1987). Mere conclusions of hypothetical retaliation will not suffice, a prisoner must "allege specific facts showing retaliation because of the exercise of the prisoner's constitutional rights." Frazier v. Dubois, 922 F.2d 560, 562 (n. 1) (10th Cir. 1990).

Plaintiff may have colorable claims but he fails to set them forth in a manner that makes it apparent to defendants what claims, other than conclusory ones, he makes against each of them. "The propriety of dismissal for failure to comply with Rule 8 does not depend on whether the complaint is wholly without merit." McHenry 84 F.3d at 1179. The complaint is dismissed with leave to amend.

If plaintiff chooses to amend the complaint, plaintiff must demonstrate how the conditions complained of have resulted in a deprivation of plaintiff's constitutional rights. See Ellis v. Cassidy, 625 F.2d 227 (9th Cir. 1980). Also, the complaint must allege in specific terms how each named defendant is involved. There can be no liability under 42 U.S.C. § 1983 unless there is some affirmative link or connection between a defendant's actions and the claimed deprivation. Rizzo v. Goode, 423 U.S. 362, 96 S.Ct. 598 (1976); May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980); Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978). Furthermore, vague and conclusory allegations of official participation in civil rights violations are not sufficient. See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

1   In addition, plaintiff is informed that the court cannot refer to a prior pleading in order to make plaintiff's amended complaint complete. Local Rule 220 requires that an amended complaint be complete in itself without reference to any prior pleading. This is because, as a general rule, an amended complaint supersedes the original complaint. See <u>Loux v. Rhay</u>, 375 F.2d 55, 57 (9th Cir. 1967). Once plaintiff files an amended complaint, the original pleading no longer serves any function in the case. Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged.

In accordance with the above, IT IS HEREBY ORDERED that:

1. Plaintiff's request for leave to proceed in forma pauperis is granted.

2. Plaintiff is obligated to pay the statutory filing fee of $350.00 for this action. Plaintiff is assessed an initial partial filing fee in accordance with the provisions of 28 U.S.C. § 1915(b)(1). All fees shall be collected and paid in accordance with this court's order to the Director of the California Department of Corrections and Rehabilitation filed concurrently herewith.

3. The complaint is dismissed for the reasons discussed above, with leave to file an amended complaint within twenty-eight days from the date of service of this order. Failure to file an amended complaint will result in a recommendation that the action be dismissed.

DATED: February 15, 2012

                        /s/ Gregory G. Hollows
                      UNITED STATES MAGISTRATE JUDGE

GGH:009
mana2891.b